**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 92-2098

_____

UNITES STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MARION EUGENE FAIR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
(December 9, 1992)

Before KING, JOHNSON, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Marion Eugene Fair ("Fair") appeals his conviction and sentence. Fair was found guilty of the unlawful possession by a previously convicted felon of a firearm that was shipped in interstate commerce. See 18 U.S.C. § 922(g)(1) (Supp. 1992). The district court sentenced him to 293 months incarceration, and imposed a $20,000 fine. Fair challenges his conviction claiming that certain evidence was improperly admitted. We find no error in the district court's conduct of the trial, and affirm Fair's conviction.

Fair also challenges the fine imposed upon him. We find that the district court misapplied the relevant sentencing guidelines. That part of the judgment imposing the fine is vacated and the case

remanded to the district court for resentencing.

Federal and state drug agents executed a search warrant on a house trailer. In one of the bedrooms the agents found two handguns and some documents which indicated that the bedroom was used by Fair. Fair was later indicted, convicted, and sentenced.

Without objection from Fair, the district court adopted the facts in his presentence investigative report (PSR). It stated that:

> [Fair's] only assets are two old junk automobiles worth approximately $1,000.00. He stated he had no liabilities and his only income is about $50.00 per month he receives from family and friends. Prior to his incarceration in the instant case, he was only sporadically employed and has held no real stable employment for a number of years. Since he has been incarcerated most of his adult life, he does not appear to have any realistic ability to pay a fine within the guideline range.

Although no reasons were contemporaneously given for imposing the $20,000 fine, in a supplemental sentencing memorandum the district court stated: "The fine assessed was intended by the court to represent a small portion of the defendant's cost of imprisonment pursuant to guideline § 5E1.2(i)."[1] The supplemental memorandum also noted that the court did consider the PSR's statement regarding Appellant's current inability to pay such a fine. The

---

[1] U.S.S.G. § 5E1.2(i) states:

> Notwithstanding of the provisions of subsection (c) of this section [minimum-maximum fine range], but subject to the provisions of subsection (f) herein [defendant's ability to pay], the court shall impose an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered.

(emphasis added).

2

court stated that a payment schedule could be worked out which would enable Fair to pay off his fine after his release.

Fair challenges the trial court's decision to admit some of the documents discovered during the search of the house trailer.[2] Defense counsel objected to these documents on a relevancy basis, contending that since Fair stipulated to being a convicted felon, the TDC documents and the letter from the Texas Court of Appeals were merely cumulative. The government argued that the documents were addressed to Fair, and tended to prove that he occupied the bedroom, and hence, constructively possessed the firearms. The court admitted the documents and gave a limiting instruction admonishing the jury to consider the documents only for the purposes of establishing possession of the guns.

Fair also challenges the imposition of the $20,000 fine, mounting a two-pronged attack: First, Fair asserts that it was error to impose a fine after adopting the PSR which indicated that he did not have the ability to pay any fine. Second, Fair argues that the imposition of a § 5E1.2(i) cost of incarceration fine was

---

[2] Fair objected to government's exhibits 9 through 15. Exhibit 9 is a letter from the Texas Department of Corrections (TDC) Staff Counsel for Inmates, and it discusses a possible appeal. Exhibit 10 is a memorandum from the TDC regarding prison work assignments. Exhibit 11 is a form letter denying a furlough request. This exhibit contains perhaps the most prejudicial material; one of the reasons checked for denial is "Inmate is a security risk and/or a threat to society for one or more of the following reasons[.]" Items checked are: (1) Length of sentence; (2) Lack of sufficient time served on sentence; and, (3) prior criminal history. Exhibit 12 is a letter from the Texas Court of Appeals acknowledging a prior communication from Fair, and Exhibit 13 is the envelope this came in. Exhibit 14 is a handwritten letter from Fair's sister, and Exhibit 15 is a parole certificate from the TDC.

a misapplication of the sentencing guidelines, as the trial court did not impose an initial § 5E1.2(a) punitive fine.

DISCUSSION

A.  <u>The Admission of the Documents.</u>

At trial, Fair objected to the relevancy of some of the documents discovered during the search.  He appears to concede the relevancy of these documents in his appellate arguments, and now contends that the district court erred in not performing a <u>Beechum</u>-type weighing of their prejudicial impact.  <u>See</u> <u>United States v. Beechum</u>, 582 F.2d 898 (5th Cir. 1978), <u>cert. denied</u>, 440 U.S. 920 (1979).

Fair correctly cites <u>Beechum</u> for the proposition that where evidence of "other offenses" is offered, the trial court must first decide that the proffered material is relevant, and then weigh its probative value against any prejudicial effect.  <u>Id.</u> at 911 (citing Fed. R. Evid. 403, 404(b)).  What Fair overlooks, however, is that to engage in this type of balancing, a court's attention must be first directed to the issue.  The unfair prejudice argument is being raised for the first time on appeal.  We therefore apply a plain error standard of review.  Fed. R. Crim. P. 52(b); <u>United States v. Loney</u>, 959 F.2d 1332, 1341 (5th Cir. 1992).  Our inquiry is limited under this standard: "[W]hen a new factual or legal issue is raised for the first time on appeal, plain error occurs where our failure to consider the question results in 'manifest injustice.'"  <u>United States v. Vontsteen</u>, 950 F.2d 1086, 1096 (5th

4

Cir. 1992) (en banc).

Viewing the issue in the context of the entire case, see id., we cannot say that admission of the documents, if error, amounts to manifest injustice. Fair maintained that he did not possess the firearms, as required for a violation of 18 U.S.C. § 922(g)(1). The documents Fair objected to were introduced to show that Fair did reside in the house trailer, and that he therefore exercised constructive possession of the weapons. Although other evidence was introduced on this point, we cannot say that the trial court committed plain error in allowing further proof on the possession element.

B. Sentencing Issues.

1. Standard of Review.

We examine the sentence to ascertain if it was imposed in violation of law, as a result of a misapplication of the sentencing guidelines, or if it was outside of the guideline range and was unreasonable. See 18 U.S.C. § 3742(e) (Supp. 1992). Findings of fact are accepted if they are not clearly erroneous. Id.; United States v. Matovsky, 935 F.2d 719, 721 (5th Cir. 1991).

2. Fair's Ability to Pay the Fine Imposed.

The district court adopted the PSR, which recommended against imposing a fine. The PSR justified this by stating:

> The defendant does not appear to have any assets which could be liquidated to pay fine [sic] immediately, nor does he appear to have the means to pay a fine on an installment basis after a lengthy period of incarceration.

At his sentencing, neither Fair nor the government objected to the

5

PSR, the sentence imposed, or the imposition of the $20,000 fine. In a supplemental sentencing memorandum, the district court reaffirmed the fine, and indicated that Fair's present indigency was considered; however, the court stated that Fair could pay off the fine in monthly installments after his release. See R. 1, at 193.

District courts are directed to impose a fine in all cases, unless the defendant establishes that he will be unable to pay. U.S.S.G. § 5E1.2(a). In determining the fine, the guidelines list seven factors for consideration, including "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources[.]" Id. § 5E1.2(d)(2). Because of the mandatory language of § 5E1.2(d) ("[T]he court shall consider. . . . "), some circuits require that trial courts make specific findings showing they properly considered the pertinent factors in determining the fine amount. See, e.g., United States v. Masters, 924 F.2d 1362, 1369 (7th Cir. 1991), cert. denied, 111 S. Ct. 2019 (1992); United States v. Seminole, 882 F.2d 441, 443 (9th Cir. 1989). We have declined to impose this requirement, as there is no statutory or sentencing guideline intimation that such detailed findings are necessary. United States v. Matovsky, 935 F.2d 719, 722 (5th Cir. 1991); see discussion at note 3, infra. But see United States v. Pattan, 931 F.2d 1035, 1044 (5th Cir. 1991), cert. denied, 112 S. Ct. 2308 (1992) (sentencing court erred in not explaining decision to impose cost of incarceration fine in

6

light of PSR's recommendation that this would impose severe hardship on defendant's family).

A brief digression is necessary to analyze the apparent divergent views espoused in <u>Matovsky</u> and <u>Pattan</u>. In <u>Matovsky</u>, the district court adopted the PSR which made no recommendation on imposing a fine. <u>See</u> 935 F.2d at 722. We held that it was not error for the court to impose a fine within the guideline range without making specific findings on Matovsky's ability to pay. <u>Id.</u> The trial court in <u>Pattan</u> likewise adopted the PSR, but this report recommended that neither a fine nor the cost of incarceration be imposed on the defendant. <u>See</u> 931 F.2d at 1038. On appeal, we held that "The only evidence we can find, that in the presentence report, does not support the decision of the trial court. . . ." <u>Id.</u> at 1044. Reading <u>Matovsky</u> and <u>Pattan</u> together, we can distill the rule that specific findings are necessary if the court adopts a PSR's findings, but then decides to depart from the PSR's recommendation on fines or cost of incarceration.[3]

The necessity for such explanation is illustrated by this case. Fair's PSR points out that he has limited future earning

---

[3] A sentencing court is required, under certain circumstances, to give a statement of reasons for imposing a sentence. <u>See</u> 18 U.S.C. § 3553(c) (Supp. 1992); <u>United States v. Pippin</u>, 903 F.2d 1478, 1484-85 (11th Cir. 1990) (if applicable guideline range is greater than twenty-four months, court must provide reasons for imposing sentence at a particular point within this range). There is no statutory counterpart requiring articulated reasons for imposing a fine on an individual. <u>See</u>, <u>e.g.</u>, <u>United States v. Marquez</u>, 941 F.2d 60, 65 (2d Cir. 1991) ("Since the requirement of subsection 3553(c)(1) is triggered only by the length of the sentence and not by the amount of the fine, the district court was under no special obligation to justify the magnitude of this fine.").

capacity, and little realistic chance of paying a large fine:  Fair has been incarcerated most of his adult life, he has minimal education, and his work record is sporadic.  Furthermore, Fair will be sixty-six years old when he is released from his present incarceration.  Even with a monthly installment plan, we are hard pressed to see how he will be able to pay off his $20,000 fine.  On remand, we urge the district court to consider these and the other factors contained in Fair's PSR when determining whether  it is appropriate "to impose a fine that a defendant has little chance of paying."  United States v. Walker, 900 F.2d 1201, 1207 (8th Cir. 1990).

It is undisputed that the guidelines place the burden of proving an inability to pay a fine squarely on the defendant.  See U.S.S.G. § 5E1.2(a), (f); United States v. Hagmann, 950 F.2d 175, 185 (5th Cir. 1991), cert. denied, 113 S. Ct. 108 (1992).  If the defendant makes such a showing, the court may impose a lesser fine, or waive the fine altogether.  U.S.S.G. § 5E1.2(f).

In Pattan, we held it was error for the district court to adopt the PSR, and then depart from its recommendation on fines and cost of incarceration, absent any reasons for such a departure.  See United States v. Pattan, 931 F.2d 1035, 1044 (5th Cir. 1991).  The only evidence before the court concerning Pattan's ability to pay was the PSR.  Id.  We now take the step that we implicitly relied on in Pattan, and hold that a defendant may rely on the PSR to establish his inability to pay a fine or cost of incarceration.  This is not an anomalous position among the circuits.  See, e.g.,

8

United States v. Rivera, 971 F.2d 876, 895 (2d Cir. 1992); United States v. Cammisano, 917 F.2d 1057, 1064 (8th Cir. 1990); United States v. Labat, 915 F.2d 603, 606 (10th Cir. 1990).

When a sentencing court adopts a PSR which recites facts showing limited or no ability to pay a fine the government must then come forward with evidence showing that a defendant can in fact pay a fine before one can be imposed. See id.; United States v. Walker, 900 F.2d 1201, 1206-07 & n.6 (8th Cir. 1990). For example, the government can point to evidence of assets concealed by the defendant,[4] evidence of the future earning potential of the defendant,[5] and even evidence of the wealth of the defendant's family.[6] Once such a showing has been made, it is within the trial court's discretion to consider the factors outlined in U.S.S.G. § 5E1.2(d), and determine if a fine should be applied, and if so, the proper amount within the applicable guideline range. The trial court should give its reasons for departing from the PSR's recommendations on fines and costs of incarceration.

2.    Cost of Incarceration Fine.

In the supplemental sentencing memorandum, the district court explained that the $20,000 fine impose on Fair "was intended by the Court to represent a small portion of the defendant's cost of imprisonment pursuant to guideline § 5E1.2(i)." R. 1, at 193. The

---

[4]  See U.S.S.G. § 5E1.2, comment. (n. 6).

[5]  See U.S.S.G. § 5E1.2(d)(2).

[6]  See United States v. Fabregat, 902 F.2d 331, 334 (5th Cir. 1990).

9

full text of § 5E1.2(i) is quoted supra, in note 1; in pertinent part this provision authorizes the sentencing court to impose "an additional fine amount" to offset the cost of incarceration, probation, or supervised release. U.S.S.G. § 5E1.2(i).

The plain language of this section indicates that a cost of incarceration fine should only be imposed after a § 5E1.2(a) punitive fine has been assessed. This is the interpretation other circuits have adopted: "[F]undamental semantics dictates that a subparagraph (i) fine cannot be 'additional,' unless it augments another fine." United States v. Labat, 915 F.2d 603, 607 (10th Cir. 1990); see also United States v. Corral, 964 F.2d 83, 84 (1st Cir. 1992) ("[A] district court may not impose a duty to pay for costs of incarceration or supervised release if the defendant is indigent for purposes of a fine under Sentencing Guideline section 5E1.2(a).").

We find this reasoning persuasive, and hold that the imposition of a cost of incarceration fine, U.S.S.G. § 5E1.2(i), is not proper absent an initial punitive fine, Id. § 5E1.2(a). To impose a cost recovery fine alone is a misapplication of the sentencing guidelines. See Labat, 915 F.2d at 606-07. The trial court in the instant case characterized Fair's $20,000 fine as a § 5E1.2(i) cost of incarceration fine, and did not delineate any portion of it as a § 5E1.2(a) punitive fine. We must therefore vacate the fine and remand the case for further consideration and resentencing.

## CONCLUSION

We hold that a defendant can properly rely on his presentence investigative report to establish that he is unable to pay a fine or cost of incarceration if the district court adopts the report. The government can present evidence to counter this showing. The district court must then weigh the applicable guideline factors and decide if a fine is then appropriate, and if so, what amount in the appropriate guideline range is to be imposed. If the court has adopted a presentence report that recommended not imposing a fine, the court must also articulate the reasons why it is departing from the report. We further hold that it is a misapplication of the guidelines to impose an "additional" cost of incarceration fine absent an initial punitive fine.

We VACATE Fair's $20,000 fine and REMAND this case for further consideration. Fair's conviction and sentence of incarceration are otherwise AFFIRMED.